# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. S2-4:11CR00361AGF(DDN) |
| | ) | |
| FRED W. ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the pretrial motions of Defendant Fred W.

Robinson. Defendant has filed motions to dismiss the indictment, to sever counts for

separate trial, to suppress GPS evidence, and for a change of venue. Pretrial matters were

referred to Magistrate Judge David D. Noce. The Magistrate Judge recommended in his

Second Pretrial Order and Recommendation ("Second R&R"; Doc. No. 83), that these

motions should be denied. Defendant filed objections to the Second R&R.

I have conducted a *de novo* review of the motions, including careful review of the

evidence before the Magistrate Judge and the arguments of the parties. The facts, for the

most part, are not in dispute, and I agree entirely with the factual findings of the

Magistrate Judge, and independently reach the same credibility determinations. In

summary, I conclude that Judge Noce's extensive report correctly sets out the facts and

the law applicable to the case. I agree with and accept his conclusions with respect to

Defendant's motions to dismiss, to sever, and for a change of venue and agree that

Defendant's motions should be denied. I find that the current indictment properly states

offenses under the federal law, that the statute is constitutional, and that the Court has jurisdiction of the offenses. Joinder of the offenses is also proper, and on the current record, severance is not warranted. Nor is a change of venue warranted based on pretrial publicity.

I find that Defendant's Fourth Amendment rights were not violated by the warrantless installation and operation of a GPS tracker, which activity took place prior to the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), and that the evidence obtained from the GPS device should not be suppressed. I do differ with the analysis in the Second R&R in one respect, as I do not believe that the Supreme Court's decision in *Davis v. United States*, 131 S. Ct. 2419 (2011), provides a good faith exception to the exclusionary rule in this particular case. That disagreement does not change the result, however, as I agree with Judge Noce's conclusion that because the agents had reasonable suspicion, Eighth Circuit law provides that there is no Fourth Amendment violation.

### Procedural Background

The procedural background and evidence are set forth fully in the Second R&R, and will only be summarized here as necessary. On September 8, 2011, the grand jury returned an eight count indictment charging Defendant with one count of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of federal program theft, in violation of 18 U.S.C. § 666, related to an alleged scheme involving the operation and funds of Paideia Academy; and five counts of federal program theft related to Defendant's employment with the St. Louis Treasurer's Office. Counts 4-8 asserted that Defendant was an

employee of the Treasurer's Office for the City of St. Louis, which organization received the requisite amount of federal funds through contracts with the United States District Court and the United States Bankruptcy Court, and that Defendant had embezzled, stole, or obtained by fraud, funds under the custody or control of the Treasurer's Office for the City of St. Louis.

Defendant filed motions to dismiss and to sever Count I from the remaining counts. Defendant also filed a motion to suppress the GPS evidence obtained from a tracking device installed on his vehicle, asserting that it constituted a search and seizure in violation of his Fourth Amendment rights. The motions were referred to the Magistrate Judge, and after an evidentiary hearing on December 1, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending the denial of the motions.

On January 23, 2012, shortly after the issuance of the R&R, the Supreme Court issued its opinion in *Jones*, holding that the installation and operation of a GPS tracking device on Jones's car constituted a search within the meaning of the Fourth Amendment. In February 2012, Defendant filed another motion to dismiss, asserting that the Court lacked subject matter jurisdiction over Counts 4-8. The matter was then referred back to the Magistrate Judge for a report and recommended disposition on the newly filed motion to dismiss, and a supplemental report and recommendation regarding the motion to suppress, in light of the Supreme Court's opinion in *Jones*.

On February 23, 2012, a superseding indictment was returned, in which Defendant was again charged with one count of wire fraud (Count 1), and two counts of federal

program theft (Counts 2 and 3) related to the funds of Paideia Academy. Counts 4-8 again charged Defendant with federal program theft, but asserted that Defendant was an "agent" of the City of St. Louis, as an employee of the Treasurer's Office, which organization received the requisite federal funds through grants from the United States Department of Housing and Urban Development.

The Magistrate Judge allowed Defendant time to determine whether to file additional pretrial motions. Defendant thereafter filed a motion to dismiss counts 4-8 of the superseding indictment for lack of subject matter jurisdiction, a motion to suppress the government's use of GPS evidence in light of *Jones*, and a motion to change venue or transfer the case. Defendant subsequently filed a motion to sever, this time asserting that Counts 1-3 (related to Paideia Academy) should be severed for separate trial from Counts 4-8 (related to the St. Louis Treasurer's Office). The Magistrate Judge also granted the motion of the United States to present additional evidence on the issue of reasonable suspicion, and a supplemental evidentiary hearing was held on April 12, 2012. The Magistrate Judge thereafter filed the Second R&R (Doc. No. 83), recommending the denial of all motions, which replaced in its entirety the R&R.

Defendant filed objections to the Second R&R objecting to each of the legal conclusions asserted therein. Two days later, the American Civil Liberties Union Foundation and the ACLU of Eastern Missouri (jointly, the "ACLU") filed a motion for leave to file an amici curiae brief regarding Defendant's motion to suppress evidence, and specifically arguing in favor of location privacy. The United States took no position with respect to the request, and I granted the motion and permitted the United States to

respond. After thorough briefing by all parties and by the ACLU, I granted Defendant's motion for oral argument and held oral argument on Defendant's motions and objections to the Second R&R.

Most recently, on October 3, 2012, a second superseding indictment was filed. Count 1 was changed to allege a slightly earlier ending date for the scheme to defraud, and the amount of Paideia funds disbursed for allegedly improper purposes were slightly increased. Counts 4-8, which previously alleged that Defendant was an agent of "an organization" (namely the City of St. Louis as an employee of the Treasurer's Office), was changed to allege that Defendant was an agent of "a local government" (again, the City of St. Louis as an employee of the Treasurer's Office). After the second superseding indictment was filed, Defendant advised the Court that he did not need additional time to evaluate whether to file additional motions directed to the amended indictment. Defendant orally reasserted his previously filed motions, and confirmed that he did not wish to amend or supplement his motions as a result of the superseding indictment. As such, the motions and objections are now ripe for determination.

## Discussion

When a party objects to a report and recommendation concerning a dispositive matter or a motion to suppress in a criminal case, the Court is required to "'make a de novo review determination of those portions of the record or specified proposed findings to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). When a party objects to orders on nondispositive matters, "[t]he district judge must consider timely objections and modify or set aside any

part of the order that is contrary to law or clearly erroneous." Rule 59(a), Fed. R. Cr. P. I have conducted such a *de novo* review, including a review of the hearings and transcripts and the arguments of the parties.

### A. The Indictment

In Counts 1-3, the current indictment charges that Defendant was the Chairman of the Board of Trustees of the Paideia Academy ("Paideia), a tuition-free Missouri Charter School for grades K-8, sponsored by the Missouri University of Science and Technology, until its charter was cancelled in 2010. Paideia was a wholly-owned subsidiary of the Paideia Corporation, a nonprofit corporation. Paideia was funded by substantial Federal education funds and Missouri education funds intended for legitimate school operations. Defendant maintained an office at Paideia's administrative office and was involved in the day-to-day operations.

Separate from Paideia, Defendant and a friend organized and incorporated Paige C. Investments, LLC, for the purpose of operating a day care center to be called The Little People's Academy. Defendant and his friend planned to operate the day care center in a building on West Florissant Avenue.

The indictment alleges that beginning on or about April 1, 2009, and continuing through at least November 10, 2010, Defendant devised a scheme to defraud and to obtain money from the State of Missouri and the United States by means of false pretenses. As part of the scheme, Defendant directed that a resolution be passed by the Paideia Board of Trustees approving a purported loan of Paideia funds to the Little People's Academy to acquire and rehab the building at West Florissant for the operation

of a day care center. In violation of the Paideia's bylaws, however, Defendant failed to advise the Board of Trustees of his financial interest in the transaction or that he was a co-owner of Paige C. Investment, LLC, the company that was to operate the day care center.

In furtherance of the scheme, on approximately September 11, 2009, Defendant directed and authorized the purchase of the West Florissant property using Paideia funds, in the amount of $22,333, which consisted of Federal and Missouri education funds. And from approximately September 18, 2009, through June 24, 2010, Defendant directed and authorized the payment of approximately $159,700 of Paideia funds, again consisting of Federal and Missouri education funds, for the construction, renovation, and rehabilitation of the building, for the purpose of developing the Little People's Academy.

On approximately June 15, 2010, the Missouri Department of Education determined not to approve Paideia's application for a continuing charter to operate its K-8 campuses. After it lost its charter, Defendant opened a bank account in the name of Paideia Corporation, West Florissant Capital Improvement, and continued to authorize the transfer of hundreds of thousands of dollars of Paideia's funds to the account and for the renovation of the building. The use of Paideia's Federal and Missouri education funds for the purchase, construction, and rehabilitation of the West Florissant property was never disclosed to or authorized by the United States Department of Education, the Missouri Department of Elementary and Secondary Education, or the Missouri University of Science and Technology.

Count 1 asserts a claim of wire fraud, related to the fax transmission of an invoice from Paideia related to the construction and rehabilitation. Counts 2 and 3 assert charges of federal program theft, in violation of 18 U.S.C. § 666(a)(1)(A), for the periods from May 1, 2009 to April 30, 2010, and May 10, 2010 to April 30, 2011, respectively, related to the diversion of funds from Paideia for the construction and development of the child care facility to be operated by Defendant.

Counts 4-8 assert charges of federal program theft related to the City of St. Louis. The indictment charges that in each of the years 2006 to 2010, Defendant was an agent of a "local government," namely the City of St. Louis, as an employee of the Treasurer's Office, and that the City received in excess of $10,000 in grants from the United States Department of Housing and Urban Development ("HUD"). It further charges that in each of these years, Defendant embezzled, stole, or fraudulently obtained funds of at least $5,000 owned or under the custody or control of the City of St. Louis, by submitting false weekly time sheets falsely certifying hours worked, and that the City of St. Louis paid the amount of $35,360 in each year based on the false time sheets, in violation of 18 U.S.C. § 666(a)(1)(A) and (a)2.

**B. Motion to Dismiss**

Defendant asserts that Counts 4-8 of the Indictment should be dismissed for lack of federal jurisdiction. Defendant contends that the statute was intended to address agencies with responsibility to administer federal funds, and that neither the Parking Division of the Treasurer's Office nor Defendant had any authority to do that. Defendant also contends that he is not an "agent" within the meaning of § 666, because the

prosecution has no evidence that Defendant had any *authority* to act on behalf of the Treasurer's Office, nor any evidence that Defendant had *authority or access* to any federal funds or the HUD grant. Defendant contends that the Treasurer's Office is an independent elective office, that revenues from parking meters, garages, and parking enforcement paid the salaries of the employees of the Treasurer's Office, and that there is not a sufficient nexus between the alleged criminal conduct and the agency receiving the federal benefits.

Based on a review of the record, I find no basis to dismiss the charges. It is unclear whether Defendant continues to question the authority of Congress to enact 18 U.S.C. § 666, but in any event I agree with the Magistrate Judge that Congress has such authority under the Spending Clause and the Necessary and Proper Clause. *See Sabri v. United States*, 541 U.S. 600, 605-06 (2004). I also find that the statute may properly be applied where, as here, the defendant is alleged essentially to be a "ghost" employee. The exception in the statute for wages paid in the ordinary course of business does not apply here, as one who submits weekly time sheets falsely certifying time worked to obtain a salary payment, when in fact no work is performed, is not receiving a "bona fide salary, wages or fee" and is not being paid in the "usual course of business" within the meaning of 18 U.S.C. § 666(c). *See United States v. Baldridge*, 559 F.3d 1126, 1139 (10th Cir. 2009).

I am also unpersuaded that the indictment must be dismissed at this stage for lack of jurisdiction. As set forth more fully in the Second R&R, the indictment alleges each of the requisite elements of the charge, namely that (1) Defendant was an agent of a local

government (the City of St. Louis); (2) during the period charged, Defendant embezzled, stole, fraudulently obtained, knowingly converted without authority, or intentionally misapplied property valuing $5,000 or more; (3) the property was owned by, or under the care, custody, or control of the local government; and (4) the local government received in excess of $10,000 in the one-year period charged, pursuant to a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance. *See* Eighth Circuit Model Jury Instruction (Criminal) § 6.18.666A (2011).

In his motion to dismiss, Defendant asks me to determine what is essentially a factual matter: that the relationship between the Treasurer's Office and the City of St. Louis is such that Defendant cannot be deemed to be an agent of the City of St. Louis. In reviewing a motion to dismiss, the allegations of the indictment must, at this stage, be accepted as true. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). Here, the grand jury has returned a superseding indictment that plainly alleges each of the elements of an offense under 18 U.S.C. § 666(a)(1)(A). The indictment is also facially sufficient as it contains the essential elements of the offense, fairly informs Defendant of the charges, and alleges sufficient information for Defendant to raise a Double Jeopardy challenge to a subsequent prosecution. *See United States v. Sohn*, 567 F.3d 392, 394 (8th Cir. 2009). The prosecution will need to meet its burden to establish, beyond a reasonable doubt, that the allegations contained in the indictment are true.

At bottom, Defendant is asking me to determine, based on the evidentiary information he has submitted, that the prosecution will be unable to prove its case. The Eighth Circuit has recognized, however, that "federal criminal procedure does not

'provide for a pre-trial determination of sufficiency of the evidence.'" *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992)).  A dismissal on this ground is therefore inappropriate at this stage where, as here, the indictment is sufficient on its face.

Defendant's further argument, that he cannot be regarded as an "agent," fails for a similar reason.  In his briefs, and more directly at oral argument, Defendant asserted that he cannot be an "agent" within the meaning of the statute because the prosecution's evidence will be that Defendant had no actual job and no actual duties at the Treasurer's Office.  Although the argument has some surface appeal, the fact that an employee or agent does not perform his duties does not mean that he ceases to be an "employee."  Nor does an employee's failure to work mean that he lacks the *ability* to bind, in some meaningful way, the entity that is paying him.  Here, too, the question of whether Defendant is an "agent" is properly a matter for proof at trial.

As such, Defendant's objection to the Magistrate Judge's recommendation that Defendant's motion to dismiss be denied is overruled, and the Court adopts and incorporates the Second R&R on this ground.

### C.  Motion to Sever

Defendant asserts that joinder of the counts related to the fraud involving Paideia with those involving the City of St. Louis is improper, and also that the prejudice to Defendant from a joint trial of the offenses requires severance under Rule 14, Fed. R. Cr. P.  I agree with the Magistrate Judge that *United States v. Bledsoe*, 674 F.2d 647, 655

(8th Cir. 1982), remains good law in this Circuit, and that the propriety of joinder is judged based on the face of the indictment.

Here, joinder is proper under Rule 8, Fed. R. Crim. P., because the offenses are of the same or similar character. In applying this standard, the Eighth Circuit has "'found joinder of offenses to be proper when the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps.'" *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011) (quoting *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir.1994) (citations and quotations omitted)). In *Garrett*, the Court found joinder was proper where the defendant was charged with two counts of being a felon in possession of a firearm, occurring approximately 15 months apart, one related to a firearm allegedly thrown from a car and the other related to a firearm found in the search of a residence that was owned by another, where the defendant apparently stayed when he visited his girlfriend there.

Here the similarity is even greater than in *Garrett*. Defendant is alleged to have engaged in two fraudulent schemes, both involving frauds upon his employers and the submission of fraudulent documents or representations, and the schemes overlap for two of the five years at issue. Further, evidence of Defendant's employment at Paideia is extremely relevant to the City of St. Louis charges. Thus, for the reasons set forth more fully in the Second R&R, I find joinder to be proper.

Nor do I believe that Counts 1-3 should be severed for separate trial under Rule 14(a), as Defendant also requests. As the Magistrate Judge noted, joint trials are favored because they "conserve state funds, diminish inconvenience to witnesses and public

authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (quotations omitted). Rule 14(a) allows for severance of properly joined "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses." "Prejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." *United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996). However, "a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendants' separate trial of the other crime." *Id*. The Eighth Circuit has recognized that "[t]he presumption against severing properly joined cases is strong." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). And "the possibility that a defendant's chances for acquittal may be better in separate trials is an insufficient justification for severance." *Id*. at 887

Here, the prosecution's case involving the two schemes will involve a fair amount of overlap of evidence and witnesses, as evidence of Defendant's activities at Paideia will be relevant to fraud charges involving the City of St. Louis. Defendant has conceded that such overlap may occur in a separate trial of Counts 4-8, but contends that no evidence of the fraudulent conduct involving the City of St. Louis would be admissible in a separate trial of Counts 1-3. Even assuming that were the test to be applied, the Court is unpersuaded, as evidence of the fraudulent conduct involving the City of St. Louis during the very same time period would likely be admissible in a separate trial of Counts 1-3 under Fed. R. Evid. 404(b). *See United States v. Jewell*, 614 F.3d 911, 922 (8th Cir.

2010) (finding no abuse of discretion in allowing the prosecution to introduce evidence of a separate tax evasion scheme in which the defendant participated to establish his intent to engage in the charged tax evasion scheme). While there is some risk of prejudice, the evidence can be sufficiently compartmentalized to avoid confusion by the jury, and any possible prejudice from spillover can be properly addressed through jury instructions.

### D. Motion for Change of Venue

Defendant has moved for a change of venue pursuant to Rule 21(a), Fed. R. Crim. P., based on news stories which he asserts create prejudice against him and make it unlikely that he can receive a fair trial in this district. I agree with the findings and reasoning set forth in the Second R&R, and for the reasons set forth more fully by the Magistrate Judge, I independently find that Defendant's motion has no merit. I have examined the record and I agree that the pretrial publicity in this case has not been at all extensive, and find that the news articles submitted were objective and were not inflammatory. Thus, Defendant has not shown that a change of venue is warranted based on pretrial publicity in this case. *See United States v. Nelson*, 347 F.3d 701, 707-08 (8th Cir. 2003). The matter can be reexamined at a later stage should the voir dire examination suggest such prejudice does, in fact, exist.

### E. Motion to Suppress GPS Evidence

In the Second R&R, the Magistrate Judge provided a detailed and thorough recitation of the facts related to the motion to dismiss. Based upon my review of the evidence presented at the evidentiary hearings on December 1, 2011, and April 12, 2012,

I find the factual findings in the report to be accurate, and I adopt them in their entirety. In summary, the evidence establishes the following facts:

### Initial Investigation

The investigation regarding Defendant began in October 2009, after Special Agent ("SA") Monique Comeau, who has been an agent with the FBI for approximately 17 years, interviewed Curtis Royston, a former employee with the St. Louis City Treasurer's Office. He had been a Human Resources Personnel Analyst with the Treasurer's Office, and he provided SA Comeau with information about work hours and payroll procedures. He also advised her that a "ghost" employee, whose last name was Robinson, was on the Treasurer's Office payroll. Royston further stated that Robinson was an associate of the Treasurer, Larry Williams, and that Williams and Robinson were involved in a charter school named Paideia Academy. Following some initial surveillance of Defendant, SA Comeau re-interviewed Royston and obtained further information about the operations of the Treasurer's Office. In these interviews, Royston also advised her that at times Williams required Royston to go to Paideia's office on Lindell Boulevard to perform work on Paideia's computer system. While at the Lindell office, he was introduced to Robinson, who was working in the Lindell office on Paideia matters, and he advised the agent that he had seen Robinson at the Lindell office several times, during the normal work day, working on Paideia matters.

Following the interviews, SA Comeau verified through employment records with the State of Missouri that Defendant was an employee of the City of St. Louis. She also determined through her investigation of records that Defendant was listed as the

Chairman of the Paideia Board of Trustees, and that Williams was also a member of the Paideia Board of Trustees. Soon thereafter, SA Comeau contacted Assistant United States Attorney ("AUSA") Hal Goldsmith, who informed her that certain other individuals had contacted the United States Attorney's office regarding the Treasurer's Office.

In December 2009, SA Comeau interviewed three other former employees of the Treasurer's Office, who provided information corroborating the information she had previously received suggesting that Defendant was receiving a paycheck, but not actually performing work. These individuals had been long-time employees who were in a position to know if Defendant had actually been performing work for the office. Some of these individuals also advised her that there had also been other employees who received paychecks, but did little or no work. At the time she interviewed these three former employees, SA Comeau was aware that they had filed a lawsuit against the Treasurer's Office related to their terminations.

On December 8-9, 2009, January 11-15, 2010, and January 19-21, 2010, SA Comeau and other FBI agents conducted surveillance of Defendant and his vehicle. This surveillance further corroborated the information she received. Defendant's car was observed at Paideia during the workday, and at his residence at night. At no time was he observed performing work for the Treasurer's Office of the City of St. Louis.

From the record as a whole, I also conclude, as did the Magistrate Judge, that by January 21, 2010, prior to installing the GPS tracking device, SA Comeau had reasonable suspicion that Defendant was engaged in fraudulent conduct, including federal program

theft, with respect to the receipt of salary payments from the Treasurer's Office of the City of St. Louis. Defendant's objections to the finding of reasonable suspicion are unpersuasive. I do not accept Defendant's suggestion that the information from the prior employees was not entitled to any weight because they had filed a lawsuit related to their terminations. SA Comeau was aware of the lawsuit prior to interviewing the employees. She conducted face-to-face interviews with the prior employees, and as an experienced agent, was in a position to assess their credibility. The information provided by each employee also supported and corroborated the information received from the others. And the information received from the interviews was further corroborated by the records reviewed and by the surveillance conducted.

Defendant also takes issue with the fact that SA Comeau did not subpoena the payroll records and other records from the Treasurer's Office (which could have alerted the Treasurer to the investigation), and that the surveillance did not rule out other possible explanations, such as that Defendant was on vacation. But these facts do not undercut the existence of reasonable suspicion on this record. Officers are not required to have all of the facts or rule out every innocent explanation for a suspect's conduct before they are deemed to have reasonable suspicion that criminal conduct is occurring. And though each factor might appear to be innocent when viewed alone, the combination of such factors may give rise to reasonable suspicion. *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002); *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994).

## Installation of the GPS Tracking Device

Throughout the investigation, SA Comeau maintained frequent contact with the AUSA. On January 14, 2010, SA Comeau met with the AUSA to discuss the possibility of attaching a GPS tracker device to Defendant's vehicle, to provide further evidence of how Defendant was spending his time. The decision to affix the GPS tracker device without judicial authorization was made by the agent, the AUSA, another Special Agent with the FBI, FBI Chief Division Counsel Craig Sieverson, and the then-Assistant FBI Special Agent in Charge. Based on these discussions, I find that SA Comeau subjectively believed that judicial authorization to attach a GPS tracker to a vehicle was not required by the then-current law.

During the early morning hours of January 22, 2010, to facilitate the physical surveillance of Defendant's movements, the agents surreptitiously affixed a GPS tracker on Defendant's vehicle while it was parked on a public street. It was a small device, with its own battery supply, and was not "hard wired" into the vehicle's battery or electrical system. The GPS tracker could not determine who was driving the vehicle or observe the interior of the vehicle. It operated with an antenna that required access to the sky to operate, and thus could not collect and record data in a garage or other covered enclosure. At no time while the GPS tracker was collecting and recording data was Defendant's vehicle located in a private garage or other enclosure; rather, it was always in a location open to public view.

The GPS tracker obtained and recorded data regarding the location of Defendant's vehicle until approximately March 17, 2010, when the device stopped recording. The agents thereafter removed the device while the vehicle was parked on a public street.

## Discussion

Defendant asserts that under the Supreme Court's opinion in *Jones*, a warrant is required prior to placement of a GPS device, and that the failure to obtain a warrant in this case requires suppression of the evidence obtained from the GPS tracking device. He contends that neither the existence of reasonable suspicion nor even probable cause impact the requirement to obtain a search warrant prior to installation of such a device on a suspect's vehicle.

The prosecution counters that the good faith exception to the exclusionary rule should apply because the "controlling law of the land" at the time the device was installed and used was that no warrant was required to install a GPS tracker of this type while the vehicle was on public streets or to monitor the information that tracked the vehicle while in public view. The prosecution relies on the Supreme Court decisions in *United States v. Knotts*, 460 U.S. 276, 281 (1983), and *United States v. Karo*, 468 U.S. 705, 715 (1984), and decisions from the Seventh and Ninth Circuits. The prosecution argues that under *Davis v. United States*, 131 S. Ct. 2419, 2423-24 (2011) (holding that "searches conducted in objectively reasonable reliance on binding appellate precedent [that is later overruled] are not subject to the exclusionary rule"), the exclusionary rule does not apply, as the agents relied upon and strictly adhered to the then-controlling appellate court opinions. The prosecution also relies on an opinion of the Eighth Circuit Court of

Appeals, issued several months following the use of the GPS tracking device in this case, *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010), and asserts that under *Marquez*, no warrant is required where, as here, the agents had reasonable suspicion to believe the target is involved in criminal activity.

The Magistrate Judge agreed with both of the prosecution's arguments, and recommended that the evidence not be suppressed. The Magistrate Judge found that the *Knotts* and *Karo* cases and authority from other circuits, as confirmed by the later opinion in *Marquez*, provided controlling authority within the meaning of *Davis*, and that the agents' conduct was in strict compliance with that authority, and therefore suppression was not appropriate under *Davis*. The Magistrate Judge also recommended that as the agents had reasonable suspicion, no warrant was required. Defendant objects to both of these conclusions.

### 1. **The Good Faith Exception**

In *Jones*, the Supreme Court, in January of this year, held that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search' within the meaning of the Fourth Amendment." *Jones*, 132 S. Ct. at 945. Notably, the majority did not rely on the "reasonable expectation of privacy" test routinely applied by the courts since it was established in *Katz v. United States*, 389 U.S. 347 (1967). Justice Scalia, in an opinion joined by four other Justices, instead held that *Katz* had not displaced the common law trespass theory underlying the Fourth Amendment, and that attachment of a GPS in order to obtain information constituted a search within the meaning of a common law

trespassory theory.  The majority expressed, for the first time, that the *Katz* "reasonable expectation of privacy" test simply supplemented and did not displace the long-standing trespass theory that existed in the Eighteenth Century.

But *Jones* left open several important issues.  The Court did not decide whether officers must in all circumstances obtain a search warrant, and if not, what degree of suspicion (probable cause, reasonable suspicion) would support a warrantless search.  *Id*. at 954.  The Court also did not decide whether, if a violation occurred, the exclusionary rule would require suppression or what such evidence must be suppressed.  *Id*. at 964 n. 11.  The United States argues I need not reach those issues in this case, because the good faith exception to the exclusionary rule applies.

The parties here do not dispute that under *Jones*, the attachment of the GPS device on Defendant's car constitutes a Fourth Amendment "search."  They also do not dispute the ability of Defendant to rely on *Jones* for this proposition, even though it was decided after the conduct in question.  *See Davis*, 131 S. Ct. at 2436 (Breyer, J., dissenting); *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).  But it does not necessarily follow that suppression of the evidence obtained is warranted.  As the Magistrate Judge correctly noted, suppression is not an automatic consequence of a Fourth Amendment violation.  The exclusionary rule is judicially created, as a "deterrent sanction," and numerous exceptions to the exclusionary rule have been recognized.  *Davis*, 131 S. Ct., at 2426-27.

The United States contends that the conduct of the agents here falls within the good faith exception to the exclusionary rule expressed in *Davis*.  In that case, officers conducted a vehicle search in compliance with then-existing Eleventh Circuit precedent

interpreting Supreme Court law. While the appeal of Davis's case was pending, the

Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 345 (2009), which announced a

new rule governing automobile searches incident to arrests, and the search conducted

plainly violated the defendant's Fourth Amendment rights under the rule announced in

*Gant*. The Supreme Court addressed the question of whether suppression of the evidence

was required and found that application of the exclusionary rule would serve no proper

deterrent function. Further extending the "good faith" exception of the *Leon*[1] line of

cases, the Supreme Court held that a search conducted "in objectively reasonable reliance

on then-binding appellate precedent" is not subject to the exclusionary rule. *Davis*, 131

S. Ct. at 2428, 2434.

Answering the question of whether the good faith exception in *Davis* applies here

requires an examination of the case law as it existed at the time the agents installed the

GPS device on Defendant's car. Because the cases are thoroughly discussed in the

Second R&R, I will simply summarize them here.

In *Knotts*, decided in 1983, the Supreme Court held that the officers' use of an

electronic beeper, that had been hidden inside of a chemical container prior to coming

into the defendant's possession, to track the defendant's movements as he traveled on

public roads with the container in his car, did not violate the Fourth Amendment, as a

person traveling in a vehicle on public roads had no reasonable expectation of privacy in

his movements. 460 U.S. at 281-82. One year later, the Court held in *Karo* that the

consensual installation of an electronic beeper in a can, prior to the can coming into the

---

[1] *United States v. Leon*, 468 U.S. 897 (1984).

defendant's possession, was not a search, because the installation itself conveyed no information at all.  468 U.S. at 712.

Prior to the installation of the GPS device on Defendant's car, the Seventh and the Ninth Circuits had both issued opinions that hold that the warrantless installation and use of a GPS tracking device on a suspect's vehicle did not violate the Fourth Amendment. *See United States v. Garcia*, 474 F.3d 994, 996 (7th Cir. 2007) (holding installation of a memory tracking device was neither a seizure nor a search, and that tracking the vehicle on public streets was not a search); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1217 (9th Cir. 2010) (holding, relying on *Knotts*, that the defendant had no expectation of privacy in the exterior of his vehicle and therefore no impermissible Fourth Amendment search occurred by virtue of the officers monitoring the defendant's vehicle with a mobile tracking devices).  No Circuit held otherwise.

On August 12, 2010, several months after the agents removed the GPS device from Defendant's car, the D.C. Circuit decided *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *aff'd sub nom. United States v. Jones*, 132 S. Ct. 945 (2012).  Rejecting the reasoning of the *Garcia*, *Pineda-Moreno*, and *Marquez* cases, the D.C. Circuit held that the use of a GPS device to track the defendant's movements over the course of a four week period violated the defendant's reasonable expectation of privacy and was a "search" within the meaning of the Fourth Amendment.  615 F.3d at 555.  It reversed the defendant's conviction, finding that the GPS evidence was obtained in violation of his Fourth Amendment rights.  The Supreme Court granted certiorari, issuing its opinion in *Jones* on January 23, 2012.

Following the decision in *Jones*, courts in the Seventh and Ninth Circuits have applied *Davis* to hold that the exclusionary rule should not apply to suppress evidence obtained in conformity with the *Garcia* and *Pineda-Moreno* cases. *See*, e.g., *United States v. Shelburne*, No. 3:11-cr-156-S, 2012 WL 2344457, at *5-6 (W.D. Ky. June 20, 2012) (applying Seventh Circuit precedent, as acts occurred in Indiana); *United States v. Aquilar*, No. 4:11-cr-298-BLW, 2012 WL 1600276, at *2 (D. Idaho May 7, 2012); *United States v. Nwobi*, No. CR10-952(C) GHK-7, 2012 WL 769746, at *3 (C.D. Cal. Mar. 7, 2012). Likewise, district courts in Minnesota and the Northern District of Iowa have had no trouble determining that the good faith exception applies to avoid the suppression of evidence obtained from installation of a GPS device after *Marquez*, but before *Jones*. *See United States v. Barraza-Maldonado*, No. 12-CR-0054 (PJS/SER)*, 2012 WL 2952312, at *6-8 (D. Minn. July 19, 2012); *United States v. Amaya*, 853 F. Supp. 2d 818, 830 (N.D. Iowa 2012), *partially withdrawn on other grounds*, 2012 WL 1523045 (N.D. Iowa May 1, 2012).

The question before this Court is whether the *Davis* good faith exception applies where, as here, no Eighth Circuit case law expressly authorized the warrantless installation of a GPS tracker. Since *Jones*, several other district courts have grappled with this issue, and the cases have come down on both sides. To date, I am aware of courts in three districts that have held that the good faith exception to the exclusionary rule applies notwithstanding the absence of express appellate precedent in their Circuits. *See United States v. Rose*, No. 11-100620-NMG, 2012 WL 4215868, at *3-5 (D. Mass. Sept. 14, 2012); *United States v. Oladosu*, Cr. No. 10-056-01 S, 2012 WL 3642851

(D.R.I. Aug. 21, 2012); *United States v. Baez*, No. 10-10275 DPW, 2012 WL 2914318, at

*1 (D. Mass. July 16, 2012)*; United States v. Leon*, 856 F. Supp. 2d 1188, 1192-93 (D.

Haw. 2012).  These courts, applying the broader principles stated in *Davis*, have held that

where officers act in objectively reasonable reliance on a comprehensive body of case

law, suppression is not required, even in the absence of binding Circuit precedent.  *See*,

*e.g.*, *Rose*, 2012 WL 4215868, at *3, 5.

Three districts have taken a contrary view.  *See United States v. Ortiz*, No. 11-251-

08, 2012 WL 2951391, at *24-25 (E.D. Pa. July 20, 2012); *United States v. Lujan*, No.

2:11CR11-SA, 2012 WL 2861546, at *3 (N.D. Miss. July 11, 2012); *United States v.

Lee*, 11-65-ART, 2012 WL 1880621, at *9 (E.D. Ky. May 22, 2012); *United States v.

Katzin*, No. 11-226, 2012 WL 1646894, at *9-10 (E.D. Pa. May 9, 2012).  These courts

hold that *Davis* does not apply in the absence of binding precedent from the Circuit, and

that permitting officers to rely on non-binding precedent would allow officers to pick and

choose what law to follow, and would not properly serve the deterrent function of the

exclusionary rule.

The United States, following reasoning similar to that of the district courts in the

first group, asserts that the good faith exception to the exclusionary rule should apply

because the "controlling law of the land" at the time the device was installed and used

was that no warrant was required to install a GPS tracker of this type while the vehicle

was on public streets or to monitor the information that tracked the vehicle while in

public view.  It contends that courts across the country, relying on the Supreme Court

decisions in *Knotts* and *Karo*, reasonably concluded that suspects had no reasonable

expectation of privacy in their movements while on public streets. The United States notes that at the time of the installation of the GPS in this case, two Circuits had taken this position, and there was no contrary Circuit law at the time. The only Circuit case to adopt a contrary position, *Maynard*,[2] was not issued until almost five months after the GPS was removed by the agents in this case.

The United States further asserts that the agents' interpretation of the law was confirmed by the *Marquez* decision. In *Marquez*, the Eighth Circuit, relying upon *Knotts*, recognized that "a person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another." *Id.* at 609. Citing the Seventh Circuit opinion in *Garcia*, the Court further concluded that when police have reasonable suspicion to believe that a vehicle is involved in criminal activity, "a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time." *Id.* at 610. Though not issued until after the device was removed here, the United States argues that the opinion confirms what the general state of the law was at the time the device was installed, and the reasonableness of the agents' belief as to what the law required. The Magistrate Judge also adopted this reasoning in the Second R&R, and determined that the good faith exception of *Davis* applied in light of the generally accepted case law at the time of the installation of the GPS.

---

[2] *See Oladosu*, 2012 WL 3642851, at *8, for a timeline of the relevant case authority.

But I do not read *Davis* that broadly, and do not agree that the *Davis* good faith exception applies here. I recognize that the majority in *Davis* spent much time discussing the rationale underlying the exclusionary rule and the need to balance the societal cost of its application. The majority noted that the deterrence benefits of exclusion "'var[y] with the culpability of the law enforcement conduct' at issue." *Davis*, 131 S.Ct. at 2427 (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). Thus, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful . . . the deterrence rationale loses much of its force and exclusion cannot pay its way." *Id*. at 2427-28 (internal citations and quotations omitted).

I do not believe, however, that in *Davis* the Supreme Court announced a good faith exception that invites courts to engage in a free-ranging balancing test in the absence of controlling Supreme Court or Circuit authority. Rather, I agree with the *Ortiz* group of cases, that the holding in *Davis* extends only to "binding" precedent. The language of *Davis* is narrow, and quite specific. In discussing whether the police were culpable, the majority in *Davis* noted "the officers' conduct was in strict compliance with then-binding Circuit law." *Davis*, at 2428-29. The opinion repeatedly references "binding" authority, *see, e.g., id.*, at 2428, 2429, 2431, 2434; the majority did not reference "generally accepted authority." Indeed, the majority specifically noted that the situation might be different with "defendants in jurisdictions in which the question remains open." *Id.* at 2432; *see also id.* at 2436 (Sotomayor, J., concurring). The majority also limited its holding to cases where "binding appellate precedent specifically *authorizes* a particular police practice." *Id*. at 2429.

This narrow extension of the exception is consistent with the *Davis* majority's discussion of the *Leon* good faith exception. The Court traced the case law progression from good faith reliance on a defective warrant issued by a magistrate judge, to good faith reliance on subsequently invalidated statutes, good faith reliance on erroneous information in a database maintained by judicial employees, and good faith reliance on an isolated record in a police database. *Id.* at 2427-28. The Court recognized that in those instances, application of the exclusionary rule would make little sense and would have no real deterrent value. In those situations the errant conduct was that of the judge, the legislature, the court staff, or those charged with maintaining a database, not of the officers who reasonably relied on that information in effecting a search, and the exclusionary rule was not intended to deter the actions of the former group. The Court reasoned that application of the exclusionary rule to the facts in *Davis* would be like "penaliz[ing] the officer for the [appellate judges'] error." *Id.* at 2429 (internal citations omitted).

But the same cannot be said where law enforcement officers reasonably, but erroneously, determine that case law that is neither binding nor directly on point, is sufficient, by extension, to authorize conduct later determined to violate the Fourth Amendment. In such a situation there is no "appellate judge" error, as the appellate court has not yet determined the issue presented. Moreover, as other courts have noted, permitting officers to pick and choose which authority to rely on yields an unworkable framework. Further, application of the exception in the context of unsettled law, would further undermine the Court's decisions on retroactive application of a new rule, a result

which, even in the majority's narrow application, concerned the dissent in *Davis*. *See id.* at 2437.

Given this reading of *Davis*, I do not find that at the time the agents in this case installed and monitored the GPS device on Defendant Robinson's car, there was any Circuit precedent expressly authorizing their conduct. The United States has not cited to any such Eighth Circuit precedent. *Knotts* and *Karo*, cited both by the United States and the Magistrate Judge, do not provide such authority. As the Magistrate Judge correctly noted, neither case was overruled by *Jones*, and neither expressly authorized the conduct at issue here.

*Knotts* involved a challenge to the monitoring of a beeper, which involves different technology that does not offer the same type of comprehensive 24-hour per day tracking of movements. The beeper had been placed inside a container with the owner's consent, before it came into Knotts' possession, and Knotts thereafter placed the container in his car and then removed it to an open field. *See Jones*, 132 S. Ct. at 951-52 (discussing *Knotts*). As the Court observed in *Jones*, "Knotts did not challenge that installation, and we specifically declined to consider its effect on the Fourth Amendment analysis." *Id.* at 952 (citing *Knotts*, 460 U.S. at 279).

*Karo* was similar, in that it involved the installation of a beeper in a container, with the consent of the original owner, which was later delivered to a buyer. *Jones*, 132 S. Ct. at 952. The Court found the consensual installation of the beeper was not a problem, because "while creating the potential for an invasion of privacy" it did not

convey any information the defendant wished to keep private, for it conveyed no information at all. *Kato*, 468 U.S. at 712.

The need for caution in this age of developing technology should be clear. Other Supreme Court cases, by their rulings or their language, have given notice that earlier pronouncements may not control when the technology changes or the nature and degree of intrusion changes. For example, in *Kyllo v. United States*, 533 U.S. 27, 33 (2001), the Court noted that it had "previously reserved judgment as to how much technological enhancement of ordinary perception" turned mere observation into a Fourth Amendment search. The Court also gave weight to the nature of the device, which was not in general public use. *Knotts* also highlighted the limits of its holding, recognizing, based in part on the limits of the technology then at issue, that "if such dragnet-type enforcement practices as respondent envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Knotts*, 460 U.S. at 283-84. Thus, one may not simply assume that prior case law authorizes conduct when it deals with different technology, is perhaps installed in a different fashion, or permits a different degree of intrusion.

I do agree that the *Garcia*, *Pineda-Moreno*, and *Marquez* opinions address the very type of conduct at issue in this case. I also find that the agents' conduct here strictly complies with the conduct authorized by these three cases. But the problem is that the first two cases were not from the Eighth Circuit, and therefore do not constitute binding Circuit authority within the meaning of *Davis*, and *Marquez* had not yet been decided at the time the agents installed and monitored this GPS device. As such, I find that the good

faith exception to the exclusionary rule, as expressed in *Davis*, does not apply to these facts.

2. **Reasonable Suspicion**

Nevertheless, I find no suppression is warranted here. In light of *Marquez*, I agree with the Magistrate Judge's conclusion that the search was not unreasonable because it was supported by reasonable suspicion.

As the Magistrate Judge correctly noted, the Court in *Jones* expressly declined to reach the issue of whether a warrant is required for installation of a GPS tracking device, or if not, the degree of suspicion necessary. *Jones*, 132 S. Ct. at 954 (holding that the Court had no occasion to consider the government's alternative argument that "the attachment and use of the devise was reasonable--and thus lawful--under the Fourth Amendment, because the 'officers had reasonable suspicion, and indeed probable cause, to believe that [Jones] was a leader in a large-scale cocaine distribution conspiracy'"). Whether a search is "reasonable" under the circumstances, is determined by assessing "the degree to which it intrudes upon an individual's privacy . . . and the degree to which it is needed for the promotion of legitimate governmental interests." *Sampson v. California*, 547 U.S. 843, 848 (2006) (citation omitted).

In *Marquez*, the Eighth Circuit addressed this precise legal issue, and held that a warrant is not required to install a non-invasive GPS tracking device on a suspect's vehicle for a reasonable period of time, when it is installed while the vehicle is parked in a public place, and the officers have reasonable suspicion that the vehicle is involved in criminal activity. *Marquez*, 605 F.3d at 610. I agree that the Magistrate Judge's

conclusion that *Marquez* was not abrogated by *Jones*, and as such remains binding law in this Circuit.

*Marquez* is on all-fours with the instant case. There, like here, the device was non-invasive and did not interfere with the operation of the vehicle. It was installed while the vehicle was in a public place, and could not be monitored while inside a structure, and only monitored the vehicle when it was in a public space. It appears that the monitoring in *Marquez* occurred for a period at least as long as the monitoring in this case. Finally, the agents here had reasonable suspicion that Robinson was engaged in criminal activity, that he used his vehicle to engaged in that activity, and that the vehicle would provide evidence of that criminal activity.

Defendant and the ACLU argue that *Marquez* was effectively abrogated by *Jones*. The ACLU further asserts that the Eighth Circuit "never purported to rule directly on the question now before this Court" because in reliance on pre-*Jones* case law, the Court held that no search had occurred. I do not agree with either of these contentions. As set forth above, the Court in *Jones* expressly declined to address whether such a search would be reasonable without a warrant if supported by reasonable suspicion, and as such did not abrogate *Marquez*. The ACLU's further contention is refuted by the language of the *Marquez* opinion. The ACLU itself notes that "'the overarching requirement of reasonableness does not come into play unless there is a search . . . within the meaning of the Fourth Amendment.'" (Doc. No. 103, at 7) (quoting *Garcia*, 474 F.3d at 996). If, as the ACLU asserts, the Eighth Circuit opinion depended wholly upon the determination that no "search" had occurred, there would be no need to address the reasonableness of

the search. But the Eighth Circuit did discuss whether the officers had reasonable

suspicion and the reasonableness of the search, in some detail.

Nor am I persuaded by the ACLU's reference to the Seventh and Ninth Circuit

decisions vacated and remanded by the Court in light of *Jones*: *United States v. Cuevas-*

*Perez*, 640 F.3d 272, 286 (7th Cir. 2011)*, cert. granted, vacated & remanded* 132 S. Ct.

1534 (2012), and *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), *cert.*

*granted, vacated & remanded* 132 S. Ct. 1533 (2012). The ACLU asserts that these two

decisions, vacated in light of *Jones*, "reached nearly identical conclusions to *Marquez.*"

But the ACLU is incorrect, as it is clear that neither of these cases involved a

finding of reasonable suspicion. The main opinion in *Cuevas-Perez* never mentions

reasonable suspicion, and the concurring opinion makes plain that the Court was not

reaching that issue. *See Cuevas-Perez*, 640 F.3d at 285 ("Nor do I find it necessary to ask

whether a reasonable suspicion standard would accommodate the competing

constitutional interests at play. *Cf. Karo*, 468 U.S. at 718 n. 5, 104 S.Ct. 3296 (intimating

that reasonable suspicion might be sufficient to allow monitoring of a beeper in the

home)."). The dissent confirms this assessment, noting that the majority took the position

that there is no "search" in *any* case where the government attaches even the most

sophisticated GPS to a vehicle in public, and then tracks its every movement, whether the

car is on a public road or parked in a private garage. The dissent acknowledged that "the

majority does not apply any Fourth Amendment screen at all--not a 'reasonable

suspicion' rule, by comparison to *Terri v. Ohio* . . . and not the normal 'probable cause'

rule." *Id.* at 287.

In *Pineda-Moreno*, the Ninth Circuit likewise held that neither installation of a GPS device on the undercarriage of the defendant's car, nor monitoring of that device, constituted a "search" under the Fourth Amendment, even though two of the installations occurred while the car was parked in the defendant's driveway, a few feet from the side of his trailer. Here, too, the appellate court based its decision on the determination that the defendant had no reasonable expectation of privacy in the undercarriage of his car, and that use of the tracking device was not a search. Like the Court in *Jones*, the appellate court specifically declined to reach the issue of reasonable suspicion. "Because we conclude that the agents did not 'search' Pineda-Moreno's car, we do not comment on the district court's conclusion that the agents had reasonable suspicion that he was engaged in criminal activity." *Pineda-Moreno*, 591 F.3d 1217 n.3.

It may well be that in a future opinion the Eighth Circuit will modify its approach to the issue in light of *Jones*, but until such time, *Marquez* remains good law. As the material facts related to the GPS in *Marquez* are indistinguishable from the facts in this case, and both cases involve a finding of reasonable suspicion, the Eighth Circuit's opinion in *Marquez* requires a denial of Defendant's motion to suppress.

3. **Other Grounds**

For the reasons stated by the Magistrate Judge in the Second R&R, I also reject Defendant's argument that the installation of the GPS was a "seizure" under the Fourth Amendment and his further argument that suppression is required under the First Amendment.

Accordingly,

**IT IS HEREBY ORDERED** that the Second Pretrial Order and Recommendation of the United States Magistrate Judge [Doc. No. 83] is **SUSTAINED and ADOPTED**, except as stated above.

**IT IS FURTHER ORDERED** that Defendant's Objections to the Second Pretrial Order and Recommendation of the United States Magistrate Judge are **OVERRULED**, except as stated herein on one ground.

**IT IS FURTHER ORDERED** that Defendant's Motions to Dismiss [Doc. Nos. 25, 52, and 66] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Sever [Doc. Nos. 26 and 78] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Suppress Evidence [Doc. Nos. 27 and 67] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Change of Venue [Doc. No. 68] is **DENIED without prejudice**.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 15th day of October, 2012.